Your Honors, and may it please the court, Riley Kircher Ulm on behalf of Appellant George Allen. I would like to reserve five minutes for rebuttal and I will keep an eye on the clock. All right, thank you Council. Your Honors, the issue before the court today is the interpretation of a statute that suspends social security benefits after a finding that an individual is a sexually The key question is when is such a finding made? The statute uses the term similar findings to encompass differences in state-specific terminology. Here the question is when is an individual found to be a sexually violent predator under California's scheme of adjudication? Respondent and the Social Security Administration argue that the mere suspicion that a person might a sexually violent predator qualifies as such a finding. But their interpretation of the statute is dependent on the idea that Congress's sole goal was to avoid paying benefits to persons in custody. However, the statute itself tells us that is incorrect. Two of the five sections of the statute are entirely unrelated to custody. Subsection four of the statute suspends benefits for persons leaning to avoid prosecution and subsection five suspends benefits for persons violating parole. Moreover, the statute is set up so that benefits are only suspended after a conclusive final determination and again this is shown in parallel provisions of the statute. For instance, per subsection one of the statute where a person has been charged with a crime and is being held in jail awaiting trial, that individual is still entitled to social security benefits. It's not until the person is actually convicted of a criminal offense that benefits are suspended. This framework is necessary to protect persons who are ultimately acquitted of a crime and persons who might be a sexually violent predator but are ultimately determined not to be are deserving of the same protection. In California, a person is not found to be a sexually violent predator until a trial where the individual is entitled to a trial by jury, a unanimous jury verdict, the right to retain experts, and the right to review relevant medical records. None of these safeguards are available at the interim probable cause hearing. Yet respondents seek to suspend benefits after this preliminary hearing rather than requiring a full adjudication. Notably, at the probable cause hearing, the judge must only determine whether probable cause exists to believe that the individual is likely to engage in sexually violent behavior upon release. But at the trial, the judge or jury must determine whether, beyond a reasonable doubt, a person is a sexually violent predator. Your briefing suggests that the burden of proof changes or substitutes the burden of proof. But the finding is the same. It's essentially a prediction as to whether the individual will be dangerous in the future. Why does it make a difference what the burden of proof is when you're making a finding? Well, first of all, Your Honor, I would note that the Supreme Court has held that in order to civilly commit someone, the state must show a probable cause finding is not enough to commit someone. And so it's not enough to find someone to be a sexually violent predator and therefore commit them to an indeterminate time period. So that again is the burden of proof as opposed to the finding. I guess the state argues the finding in this case, or the government argues the finding in this case is a finding, a prediction of future dangerousness. Is that wrong? Yes, Your Honor. I would argue that that is also incorrect because at the probable cause hearing, the only question is whether someone is likely to engage in sexually violent behavior upon release. Whereas the definition of a sexually violent predator has three elements, and those elements are considered only at the trial. And those elements are- I thought all three of those elements were considered at the initial hearing. The judge ordered Mr. Allen confined pending the final resolution of whether he was a sexually violent predator, that he had the requisite conviction for a sexual offense, that he had a diagnosis of a mental illness and that he was likely to be sexually dangerous. I thought the judge made all three of those determinations. Your Honor, here, the judge did make those determinations, but those were gratuitous findings. Those were not required for the statute. The only requirement at the probable cause hearing is one of those elements that they're likely to engage in sexually violent behavior upon release. And that's shown in the California Welfare and Institutional Code section 6604, which discusses the finding that must be made at the probable cause hearing. And that finding has nothing to do with whether someone has a diagnosed mental disorder or whether they've been convicted of a sexually violent offense. So if we adopted your interpretation of the statute, I think what that would mean is that in every instance in which a person completes a term of imprisonment and does not immediately have a finding of that they're a sexually violent predator beyond a reasonable doubt, that the statute doesn't apply. Because the word immediately upon completion of the confinement. So if we read that sentence, that section together, immediately, and then that finding means beyond a reasonable doubt, then there's no period in which the state system can have a probable cause determination and then move to the trial. So this has to happen before he or she is released from the confinement of the underlying sexual offense. Your Honor, I don't think the statute needs to be interpreted in that way. I would say that the most logical interpretation of the term immediately is just that the chain of confinement cannot be broken between the time that they are released on parole and between the time they have their probable cause hearing. So during that entire period, as long as the I mean, the trial, my apologies, once the trial is completed, and they're determined that beyond a reasonable doubt, they are a sexually violent predator, they would lose their social security benefit. How could it ever be any different? In other words, the way that I understand the California statute, the person is not confined unless there is the initial conclusion that they are likely to be sexually dangerous or harmful to people. So if you're saying immediately just means continuous confinement, if there isn't continuous confinement, there is no trial. There is no second phase. We don't go to decide if the person is a sexually violent predator. So that's no distinction. It just means what? Why does that mean that the statute still applies? It still seems to me you're reading the word immediately out of the statute. Well, Your Honor, I think the word immediately means that it has to be immediately after conviction. So if someone was thought to potentially be a sexually violent predator and had never committed any crime and was never held in custody and entered this adjudication scheme in a different manner, then the statute wouldn't apply. And that's how I would suggest reading the term immediately. And I would also note that under respondent's interpretation of immediately, it's really unworkable because here the court didn't even make any probable cause finding until eight years after Mr. Allen had been released from custody. So there was just a prima facie finding at the beginning. And then the probable cause finding wasn't until eight years later. So their definition immediately doesn't work either. Do you mean the probable cause determination was eight years later or the trial? No, the probable cause determination. So under your reading of the statute, what this would mean is if there's an initial proceeding and a finding that this person is dangerous and is going to be held pending a trial on this issue during the interim period between the completion of their term of imprisonment for the underlying offense and finding beyond a reasonable doubt that they are a sexually violent predator during that interim period, they're entitled to benefits. Is that how you read the statute? Yes, Your Honor. And picking up on the fact that respondent's interpretation is unworkable, it would basically mean that before you have any hearing and any right to present any defense or even a probable cause finding that just based on a mere suspicion where you're being held pending that probable cause hearing, that you would lose benefits. And clearly Congress did not intend for that to be the case, but a mere suspicion would cause someone to lose their social security benefits. Actually, I hadn't picked up on this before. He was still confined. Wasn't Mr. Allen still confined after his prison term expired? He was civilly confined. What was the authority for that confinement between the time of his first confinement ending and his probable cause hearing taking place? Yes, Your Honor. At that point, there was a prima facie hearing to review the petition and the standard is whether the petition contains sufficient facts that, if true, would indicate that there is probable cause. So it's a much lower standard. If you look at the second excerpts of record at 24 and 25, this is when there was that prima facie hearing, and you'll see at the end it's continued for further proceeding. And then if you go back to the second excerpts of record, pages 21 to 22, that is where there was actually the probable cause determination, and he was put into custody pending trial. He was in custody previous to that, but put back in custody pending trial. Okay. So in 2003, the court made a finding that it's likely that he would engage in sexually violent behavior if released from the jurisdiction of the Department of Corrections. And on the basis of that finding, he was retained. He was detained in a detention center. So the question for me is, why isn't that finding a similar finding and found that he was a sexually dangerous person as set out in the statute? And as I understand your position, it's not the same because the standard of proof is different than beyond a reasonable doubt. Is that correct? Yes, your honor. It's not the standard of proof is beyond a reasonable doubt, and also that due process safeguards are only employed at the trial where the individual has the right to a trial by the jury, the right to review relevant medical records, the right to experts. The finding was the same, but the levels of protection that he was entitled to were different at the various, at the three different stages. Is that correct, what you're saying? Not exactly, your honor. The finding here was similar in that the judge covered the three elements, but it was not required to do so. And as this is a question of statutory interpretation, I would ask that the court consider what is required by the statute as opposed to what? Just to clarify, the three elements are under California law for meeting that standard, but we're actually looking at the standard under federal law, right? And that just has a finding that the individual is a sexually dangerous person or a similar finding. There's no, it required by a state statute, does it? No, correct, your honor. But the language, the two examples that Congress gives in the statute of the sexually violent person and a sexually dangerous person, those are examples of what different state terminology is. And that third term in the statute of similar findings is cabined by those two specific examples. And that's well settled in this court's jurisprudence that a third generic term is cabined by those two specific examples. So it cannot go on to mean a probable cause finding when those two specific examples are referring to state and federal statutes that all of which require at least clear and convincing evidence. In no state can you be deemed a sexually dangerous person or sexual violent predator or something on a standard below clear and convincing evidence. And if your honors have no further questions, I'd like to reserve my remaining time for rebuttal. All right. Thank you, Mr. Scarborough. Morning, your honors, and may it please the court, Philip Scarborough from the United States Attorney's Office on behalf of the Commissioner of Social Security. The district court's interpretation of section 402XA13 was correct for three main reasons. First, the statute doesn't specify what standard of proof must be used. All it specifies is the finding has to be similar. Second, other language in the statute shows that the word finding is distinct from other types of judicial determinations such as a verdict or a conviction. And third, the district court's interpretation gives full effect to the obvious intent of the statute as well as the most natural meaning to the statutory text, especially the word immediately. I'll address each of those three shows with respect to how this case proceeded over the years. Mr. Allen was confined pursuant to his criminal conviction until September of 2003. Then there was, in fact, a probable cause hearing on September 4th, 2003, and that's at the second volume of the excerpts of record, page 24. If you look right at the top of that minute order, those minutes from the Superior Court in Los Angeles, it says probable cause hearing right there in 2003. So counsel said in her argument that there wasn't, in fact, a probable cause hearing for at least eight years, but that's simply not true. The probable cause hearing occurred, the court made the required findings, and in fact, at that probable cause hearing in 2003, Mr. Allen stipulated to the evidence that the state submitted against him. It says right there, at this time, the defense stipulates to the reports submitted by the doctors that the reports were from. So I just want to clarify that. Now, there was another probable cause hearing in 2011, but there was also similar, and similar findings were made, but there were two probable cause hearings, and the record is very clear about that. So with that clarified, I'll move on now to the statutory arguments. With respect to the first point that I'd like to make, the statute doesn't say what level of proof is necessary in order to be able to make the finding. All it says is that the required finding or a similar finding has to be made. Mr. Allen's argument focuses on the word is, that the statute requires a finding that he is a sexually violent predator, but that doesn't answer the question of what evidentiary burden has to be used to make that finding. So this is my little stumbling block on this, because when the word is is used, it means that something is in fact, with a very high degree of certitude, what it is. It has to be a sexually dangerous person or a sexual predator that they actually are, would come within the definition of that. And when a probable cause finding is made, the finding is that there's a fair probability that they come within the definition of sexually dangerous person or sexual predator, not that they are or he is a sexually violent. And it seems to me there is a higher level of certainty that that is in fact, the case written into the statute and that that's not ambiguous. I disagree with the court that it's not ambiguous. It doesn't mention what level of certainty has to be made. And as a question, it doesn't say fair probability, for example, it doesn't say fair probability, but every standard of proof your honor is an assessment of the level of probability, even beyond a reasonable doubt. There is a possibility that that kind of a finding is wrong, clear and convincing evidence, it's a lower level of proof, but it's a similar type of finding where an individual, even with a probable cause standard, it's still an assessment of the probability that the fact finder has to look at the evidence and then has to make a determination based on what standard of proof is in the statute. The fact that it doesn't specify what level of proof needs to be made to make the required finding. Why is that an ambiguity in the statute as opposed to something that lawyers are bringing into the statute? I mean, it's an argument that okay, it should have specified, but that doesn't make the language it used ambiguous. No, it absolutely does because the statute says nothing at all about what standard of proof. In any court that reads this statute would have to ask the question, well, what standard of proof does that finding have to be made by? It doesn't say reasonable doubt. It doesn't say by a preponderance of the evidence. It also doesn't say clear and convincing evidence or any of the other usual standards. Your position is that this statute is ambiguous because it uses the word is and does not say about burden of proof? Yes, our position is that there is some ambiguity built into the statute because it doesn't specify at what level that finding needs to be made. You're not arguing that similar finding is ambiguous? Well, we also argue that similar finding, the type of finding that a similar type of finding is a sufficient finding. We're arguing that this at a minimum was that type of a finding. If you look at the types of, the only difference between what the judge found on two different occasions, including one of which in 2003 when Mr. Allen stipulated to the evidence against him, the only difference between that and the ultimate determination in terms of what the finding was is the standard of proof. And so because that standard of proof is not specified in the statute, it is ambiguous. And there is some question about what standard ought to be used. Now, if we look at other elements of the statute, and this is the second point that I mentioned, if we look at other elements of the statute that specify other types of judicial determinations that can be made, we see that finding is in fact distinct from the type of, from a, you know, from a jury conviction, for example, which is used in 402XA1 subpart one. It's also distinct. The word finding is distinct from a verdict, which is specified in 402X1A subpart two, where it says a verdict or a finding. So it's clear that the statutory drafters intended a finding to be something other than a verdict, something other than a determination by a jury, something other than a conviction by a jury on a reasonable death standard. Now, excuse me. Council argues in response to that argument in the reply brief that a jury verdict isn't necessary on a sexually violent predator determination. But that again is contradicted by the record where, you know, the verdict, the reading of the verdict, the court minutes reading the verdict after the jury made it are in the record and it refers to it as a verdict. If Congress had wanted a verdict to be the necessary triggering element, it would have said verdict just as it did in other parts of the statute. So the fact that there's a finding and that's made even more ambiguous by the term similar finding, I think it's clear that, you know, that there is some intention by Congress here to make sure that they're able to encompass the types of statutory schemes that they were intending to prohibit benefits for. You know, these are the types of statutory schemes as Judge Beatty pointed out. There's never going to be a time when a person is immediately confined pursuant to a jury verdict on a reasonable death standard once they're released from prison. The statutory schemes just don't work that way. They certainly don't work that way here in California and they don't work that way in all of the other states that have these cases. Moving on now, one other point I would like to make is that the existence of the probable cause hearing, there's been some discussion from counsel about the protections that are available at the jury trial and there's no doubt that there are more protections available at the jury trial. A jury is a type of, is a procedural device that's not available during a probable cause hearing, but this is different than other types of probable cause findings. For example, many of the cases that are cited in the opposing counsel's brief refer to probable cause findings, for example, for warrants. A warrant being issued, that's Clark versus Estrue from the Second Circuit. This is a very different type of probable cause finding where Mr. Allen had an opportunity to participate. He stipulated to the state's evidence. He was represented by counsel at both of the probable cause hearings. So, you know, so there is a much higher level of participation here than there is if there's a warrant that's issued or than there is if, you know, during a grand jury indictment, for example, or something like that. That's not what we're talking about here. We're talking about somebody who had two opportunities to participate in a court proceeding represented by counsel and he stipulated to the state's evidence, you know, on that first hearing. So, I think that that also distinguishes this from most of the types of cases that we're talking about. Can I ask you a question, please? You argued that we should defer to the agency's interpretation and you pointed the program operational manual system, the POMS. The statement there seems somewhat equivocal in discussing the California scheme. It says stage one seems applicable to period. In other words, the claim remains in suspension. Are you arguing that that statement, stage one seems applicable is sufficiently clear that we should defer to the agency's interpretation based on that? So, I think the best way to look at the POMS guidance is that it shows that the commissioner didn't, you know, this is not a litigation position. The commissioner had thought about before this litigation arose. You know, POMS is not something, for example, the Chevron deference would apply to. The case law is clear about that. And, you know, so I think the best way to look at POMS and the reason we cited to it was to show that this is something that the agency had given some thought to before this litigation arose. The other thing that I would say about that argument in Appellant's reply brief is that if anything, it shows the ambiguity in the statute. If anything, it shows that, you know, the agency when it looked at this had to kind of figure out which way it was going to go on a statutory interpretation question. So, I think that that does, you know, the POMS guidance sort of is what it is. It shows that they had thought about it and that it wasn't something that was just put into effect, you know, post hoc with this litigation. So, that's what I would say about that. Now, the last point that I wanted to make touches upon that word immediately in the statute. And the word immediately under the Appellant's interpretation would be entirely stricken out of the statute. And I think that that's another way to distinguish this particular provision within Section 402X1A from the other prohibitions on benefit payments in Section 402X1A. Those others don't have this temporal element in it. Immediately means, most naturally, you know, right after that the person has to go directly from confinement under the conviction to confinement under the similar finding. And so, you know, under the Appellant's interpretation, immediately really doesn't have much effect at all. It gets interpreted to mean something completely different. Now, the other thing that they argue in response to this is that it's not an answer to read the statute in a completely different way. You know, Congress wrote the statute as it wrote it. But we also have to assume that Congress intended the statute to have some kind of an effect. And it wouldn't have any effect whatsoever in California if we adopted the Appellant's interpretation of immediately or of the statute overall. It also wouldn't have an effect in all of the other states where very similar types of processes occur. So I think that that's an important point for the Court to keep in mind as well. I'm sorry, could you clarify, why would it not have any effect? The point, Your Honor, that you were making earlier, that the individual has to move immediately from custody pursuant to the criminal conviction, immediately pursuant to the required finding into custody as a sexually violent person. If we interpret it to mean that there has to be a required, there has to be a jury trial and a beyond a reasonable doubt finding, then that's never going to happen immediately. Right, I understand that. But Ms. Ohm's response to that was it just means no break in confinement and that the person would then not be eligible for benefits in the interim period between the probable cause determination and the trial. Is it possible it could be applied that way so it still has effect in California and other states with a similar statute? I think that that completely writes the word immediately out of the statute. It turns the word immediately into until after a period of confinement pursuant to a probable cause finding. And so, and then I would also point to a different section of the POMS which is referenced in that other section that was cited in the brief that indicates that the commissioner interprets immediately like that. So that's in section GN 02607.350 subpart B1B of the POMS indicates that that's what the commissioner interprets immediately to me. So, you know, in conclusion, the commissioner's interpretation gives effect to the apparent intent of the statute, the obvious intent to not double pay for someone's upkeep when they're already being declined. There's been those types of findings here. Mr. Allen had an opportunity to challenge them. He declined to do so in 2003. He had an opportunity to do it in 2011 and he Thank you. You're on mute. And so just Ms. Ohm, you'll be able to have a go, but I just want the clerk of the court or whoever's monitoring this. I'm hearing a lot of background noise and talking. Are you hearing this judges Sakuda and Beatty? Yes, I'm not. I'm hearing it right now. I'm just wondering if someone who's Mike on mute. I'm just looking at that now, judge. I can't Wayne is yours. No, yours looks to be on mute. Wayne was yours on moments ago. No, I've been muted the whole time. Yeah, as have I. I'm not hearing it now. Judge, are you hearing it? I'm not hearing it right at this moment, but we were hearing it a lot during Mr. Scarborough's Yeah, I don't see anyone's Mike on right now other than the judges and the attorneys. All right, Ms. Ohm, I'm sorry to make a break in the argument, but you may proceed with rebuttal. Thank you. A few brief points. First, respondents understanding of the record is incorrect. That probable cause hearing, the defendant made a motion to dismiss. It was not heard. And the proceedings were continued for in the trial, or sorry, the probable cause hearing was continued for further proceedings. And that probable cause determination was not made until 2011, where on page 22 of the second excerpts of record, the court deemed the probable cause hearing submitted. Second, I would note that the statute didn't need to specify a burden of proof because it was incorporating the different state schemes and federal schemes. And also the Supreme Court of the United States had already made clear that at least clear and convincing evidence is required in all cases of civil confinement. Third, the term verdict was not used because we're dealing here with civil confinement. There's no criminal matter at issue. The criminal conviction has already been completed. The question is now whether Mr. Allen and those so situated should be civilly confined. That's why it uses the term finding the parts of the statute where it uses term verdict are all parts of the statute where it's dealing with criminal convictions, where again, it uses finding to refer to civil findings. And fourth, I would just note that immediately means that the confinement must just be continual, not that the trial itself must be immediate. Thank you, Your Honor. Thank you very much. And Ms. Ohm, I want to thank you and your firm, Keeper Van Ness and Peters for taking this matter on pro bono. And Allen, Commissioner of Social Security is
judges: WARDLAW, IKUTA, BADE